### UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

| | | |
|---|---|---|
| **CAROL DAVIS,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **Docket No. 04-143-P-S** |
| | ) | |
| **CUMBERLAND COUNTY,** | ) | |
| | ) | |
| **Defendant** | ) | |

### RECOMMENDED DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The defendant, Cumberland County, moves for summary judgment on all claims asserted against it in this action alleging sexual harassment and constructive discharge. I recommend that the motion be granted in part and denied in part.

### I. Summary Judgment Standard

#### A.  Federal Rule of Civil Procedure 56

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004). "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. By like token, 'genuine' means that 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party.'" *Navarro v. Pfizer Corp.*, 261 F.3d 90, 93-94 (1st Cir. 2001) (quoting *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Santoni,* 369 F.3d at 598. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

### B. Local Rule 56

The evidence the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the Local Rules of this District. *See* Loc. R. 56. The moving party must first file a statement of material facts that it claims are not in dispute. *See* Loc. R. 56(b). Each fact must be set forth in a numbered paragraph and supported by a specific record citation. *See id*. The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]" Loc. R. 56(c). The nonmovant likewise must support each denial or qualification with an appropriate record citation. *See id*. The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each supported by a specific record citation. *See id*. The movant then

must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement.  *See* Loc. R. 56(d).  Again, each denial or qualification must be supported by an appropriate record citation.  *See id*.

Failure to comply with Local Rule 56 can result in serious consequences.  "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted."  Loc. R. 56(e).  In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact."  *Id*.; *see also, e.g., Cosme-Rosado v. Serrano-Rodriguez*, 360 F.3d 42, 45 (1st Cir. 2004) ("We have consistently upheld the enforcement of [Puerto Rico's similar local] rule, noting repeatedly that parties ignore it at their peril and that failure to present a statement of disputed facts, embroidered with specific citations to the record, justifies the court's deeming the facts presented in the movant's statement of undisputed facts admitted." (citations and internal punctuation omitted).

## II.  Factual Background

The following undisputed material facts are established by the parties' statements of material facts.

The plaintiff, Carol Davis, served as a juvenile trial assistant from February 14, 2000 until she resigned her employment on July 17, 2000.  Statement of Uncontested Material Facts in Support of Defendant's Motion for Summary Judgment ("Defendant's SMF") (Docket No. 25) ¶ 1; Plaintiff's Responses to Defendant's Statement of Material Facts ("Plaintiff's Responsive SMF") (Docket No. 37) ¶ 1.  She was a non-supervisory employee of the defendant.  *Id*.  Christian Baither, also an

employee of the defendant, served as a juvenile victim assistant from March 19, 2001 to the present. *Id*. ¶ 2. Stephen Dassatti has served as an assistant district attorney in the Juvenile Division of the Cumberland County District Attorney's Office from August 5, 1991 to the present. *Id*. ¶ 3. He is an employee of the State of Maine. *Id*. Christine Thibeault has served as an assistant district attorney employed in the Juvenile Division of the Cumberland County District Attorney's Office from January 8, 1996 to the present. *Id*. ¶ 4. She is a supervisory employee of the State of Maine. *Id*. She is familiar with the Cumberland County sexual harassment policy and the Cumberland County District Attorney's Office sexual harassment policy. *Id*. Robin Dahms has served as a secretary, trial assistant paralegal supervisor and currently as legal administration supervisor in the Cumberland County District Attorney's Office from November 9, 1992 to the present. *Id*. ¶ 5. Stephanie Anderson has served as the elected district attorney for Cumberland County from January 1, 1991 to the present. *Id*. ¶ 6.

Cumberland County has a sexual harassment policy denominated as Administrative Regulation No. 4 which has been in place since August 9, 1996. *Id*. ¶ 7. The county's policy provides that employees who are unsure whether they have been a victim of sexual harassment are encouraged to contact the county's personnel director for confidential counseling. *Id*. ¶ 15. From time to time, Cumberland County provides its employees with sexual harassment training. *Id*. ¶ 9. On October 18, 2001 county employees were provided with training in sexual harassment. *Id*. ¶ 10. Individuals who attended the training were required to sign an acknowledgment of sexual harassment training. *Id*. The plaintiff attended the training and received the written material attached as Exhibit L to the defendant's statement of material facts. Plaintiff's Responsive SMF ¶ 10.

On March 1, 2001 Anderson issued a sexual harassment policy which pertains directly to all individuals working in the Cumberland County District Attorney's Office. Defendant's SMF ¶ 16;

Plaintiff's Responsive SMF ¶ 16.   All individuals working in the Cumberland County District Attorney's Office were required to read the policy and then sign an acknowledgment that they had received, read and understood the policy.  *Id.* ¶ 17.  The plaintiff, Baither and Dassatti all signed the acknowledgment.  *Id.*  The policy provides a potential victim with the option of reporting the matter to a direct supervisor, any other supervisor in the office, the district attorney or the county human resources director.  *Id.* ¶ 19.  The policy provides that all complaints will be investigate promptly and that investigations will be conducted in a manner that is as confidential as possible, while respecting the rights of all persons involved.  *Id.* ¶ 20.  The policy also provides that investigations may be conducted by an outside party.  *Id.*  The policy contains a pledge against retaliation.  *Id.* ¶ 21.  The policy specifically identifies individuals outside the District Attorney's Office who may be contacted in order to report sexual harassment.  *Id.* ¶ 22.  Both the county sexual harassment policy and the district attorney's sexual harassment policy strictly prohibit sexual harassment.  *Id.* ¶ 24.

Job descriptions for the plaintiff and Baither were promulgated and approved by the district attorney.  *Id.* ¶ 25.  Baither has never participated in any employee evaluations or reviews in the Cumberland County District Attorney's Office.  *Id.* ¶ 28.[1]  He has never had the ability to determine or change the work hours of any employee in the District Attorney's Office, including the plaintiff.  *Id.* ¶ 29.  He has never had the ability to determine or change the physical location at which employees of the District Attorney's Office, including the plaintiff, carry out their work duties.  *Id.* ¶ 30.  He has never had the ability to set or change the pay levels of any employee of the District Attorney's Office, including the plaintiff.  *Id.* ¶ 31.  He has never had the authority to reprimand or otherwise discipline

---

[1] The plaintiff purports to deny this paragraph of the defendant's statement of material facts, Plaintiff's Responsive SMF ¶ 28, but the record evidence cited in support of the denial, Declaration of Carol Davis ("Plaintiff's Decl.") (Docket No. 38) ¶ 11, is not responsive to the factual averments in this paragraph of the defendant's statement of material facts.  Because the factual averments are supported by the evidence cited by the defendant, Affidavit of Stephanie Anderson ("Anderson Aff.") (Docket No. 28) ¶ 27, it is deemed admitted under Local Rule 56(e).

any employee of the District Attorney's Office, including the plaintiff.  *Id*. ¶ 32.  He has never had any authority to hire or terminate any employee of the District Attorney's Office, including the plaintiff. *Id*. ¶ 33.

Dassatti has never had the ability to determine or change the physical location at which employees of the District Attorney's Office, including the plaintiff, carry out their work duties.  *Id*. ¶ 38.  He never had the ability to set or change the plaintiff's pay level.  *Id*. ¶ 39.[2]

Thibeault is the direct supervisor of all attorneys who work in the Juvenile Division of the District Attorney's Office and shares supervisory responsibility for the two staff members who work in that division.  *Id*. ¶ 42.  Dahms also serves as a supervisor for county employees in the Juvenile Division.  *Id*. ¶ 43.

The plaintiff alleges that in or about December 2001 Dassatti showed her the picture of a girl in a short skirt and asked her if she were looking for a man.  *Id*. ¶ 44.  She alleges that on approximately three occasions beginning in December 2001 Dassatti brought some files to her office and whispered in her ear, "I'm the only one who cares enough about you to bring files down."  *Id*. ¶ 46.  On these three occasions the plaintiff was not offended but was concerned.  *Id*. ¶ 48.

The plaintiff alleges that in April 2002 Dassatti showed her and Michelle Baldwin, Esq., a picture of a woman in a skimpy negligee and said to Baldwin, "Don't you think this would look nice on Carol."  *Id*. ¶ 49.  The plaintiff alleges that Dassatti hugged and kissed her at Anderson's Christmas party and said that he was upset because the plaintiff's husband was at the party.  *Id*. ¶ 51.  The plaintiff alleges that Dassatti asked her several times to attend a rehearsal of a band of which he was a member.  *Id*. ¶ 53.  The plaintiff alleges that Dassatti invited her to attend "movie night" with him and

---

[2] The plaintiff purports to deny this paragraph of the defendant's statement of material facts, but her denial does not address the portion of the paragraph that I have reproduced here.  Plaintiff's Responsive SMF ¶ 39.  That portion of the paragraph, being adequately supported by the evidence cited in support by the defendant, Anderson Aff. ¶ 30, is therefore deemed admitted.

other members of the District Attorney's Office and their families. *Id*. ¶ 55. She alleges that Dassatti told her, when she asked him whether he would be attending an event at which her nephew would be playing in a band, that if he went he would be going to see the plaintiff. *Id*. ¶ 57. She alleges that in the spring of 2002 Dassatti told her that he and Baither were investigating her private life. *Id*. ¶ 59. She alleges that Dassatti played a game with a tissue which, on one occasion, resulting in a tissue touching her fact and eyes. *Id*. ¶ 63. She first reported these allegations on May 16, 20 or 21, 2002. *Id*. ¶¶ 50, 52, 54, 56, 58, 60 and 64.

The plaintiff alleges that Dassatti referred to her on many occasions, beginning in late March or early April 2002, as "my Carol." *Id*. ¶ 61. She alleges that on one occasion between February and April 2002 Dassatti asserted or implied, in the presence of Jennifer Goan, that the plaintiff was a prostitute. *Id*. ¶ 67. She alleges that Dassatti asked her whose name she called out in bed. *Id*. ¶ 69. She alleges that Dassatti gave her a piece of candy before Valentines Day in 2002 that had the words "my babe" on it. *Id*. ¶ 73. She first reported these allegations on December 12, 2002. *Id*. ¶¶ 62, 68, 70, 74.

The plaintiff alleges that in May 2002 Dassatti gave her a hug and a kiss in the office in private and stated that he did it because he felt like it. *Id*. ¶ 65. She alleges that when she confronted Dassatti about him seeming to be two different people, he responded, "That's just me and my brother, we both adore you and worship the ground you walk on." *Id*. ¶ 71. She first reported this alleged incident on May 16, 2002. *Id*. ¶ 72.

The plaintiff alleges that Dassatti required her to address him as the "juvenile commander" and would not answer questions unless she did. *Id*. ¶ 75. She alleges that Dassatti ordered her to sit in the judge's chair in a district court courtroom and, when she protested, blocked the aisle so that she could not leave, stated that he would make sure that nobody was coming, and required her to sit in the chair.

*Id*. ¶ 77.  She alleges that Dassatti performed "pen checks" where he would check the pens at her desk for caps and if they did not all have caps, he told her that she needed to do a better job.  *Id*. ¶ 79.

She alleges that in December 2001 or January 2002, in the reception area of the District Attorney's Office, Dassatti pushed her with his shoulder and then placed his hands on the front of her shoulders and pushed her backwards.  *Id*. ¶ 81.  She alleges that on a separate occasion in January or February 2002 in the Juvenile Division office, Dassatti began pushing her backwards with the palms of his hands against the front of her shoulders and, as she took steps backwards, would step forward onto her toes.  *Id*. ¶ 83.  The plaintiff first reported these allegations on December 15, 2003.  *Id*. ¶¶ 82, 84.

The plaintiff alleges that on May 9, 2002 Dassatti asked her if she liked her job and told her that before she sent him an e-mail (apparently referencing concerns she had about him), she should think long and hard.  *Id*. ¶ 85.  She alleges that in April 2002, when she entered the Juvenile Division office, Dassatti approached her, ordered her to leave the office and when she re-entered to hold out her arm and say, "Yo."  *Id*. ¶ 87.  She further alleges that Dassatti then performed a trick where he caused a quarter to disappear and then told the plaintiff to do the trick.  *Id*. ¶ 89.  When she protested that she could not, she alleges that Dassatti hollered at her, "I command you to do it now." *Id*. ¶ 89.  The plaintiff first reported these allegations on December 12, 2002.  *Id*. ¶¶ 88, 90.

The plaintiff alleges that beginning in December 2001 Dassatti held his hand up and told her that she was fired between 10 and 20 times.  *Id*. ¶ 91.  She alleges that in December 2001 Dassatti asked her to look for a file that ended up being on Dassatti's desk.  *Id*. ¶ 93.  According to the plaintiff, he then asked her, "If I took the file home and left it there and you couldn't find it, whose fault [was it]," and the plaintiff was required to respond that it was her fault.  *Id*.  The plaintiff alleges that

Dassatti told her as many as five or six times that he had ridden his bicycle past her house. *Id*. ¶ 94. She first reported these allegations in May 2002. *Id*. ¶¶ 92, 95.

The plaintiff alleges that on at least two and as many as four occasions, Baither made a comment to the effect that she should not "get her panties all excited." *Id*. ¶ 96. She alleges that in November 2001 in the lunchroom of the District Attorney's Office Baither stated in front of others that he had seen the plaintiff in the office sitting in her panties drinking alcohol and smoking a bong. *Id*. ¶ 98. She first reported this allegation in March 2002. *Id*. ¶ 99. She alleges that Baither said to her on several occasions that he and Dassatti wanted to know what went on in the privacy of her bedroom, and that when her husband next came in they were going to ask him what she was like in bed. *Id*. ¶ 100. She first reported this allegation on May 16, 2002. *Id*. ¶ 101. The plaintiff alleges that on two occasions Baither referred to her as a "bitch." *Id*. ¶ 102. She first reported this allegation on December 12, 2002. *Id*. ¶ 103. She alleges that on June 12, 2002 Baither made a remark in her presence to Dassatti that someone should "stick a bug up Stephanie's ass." *Id*. ¶ 104. She first reported this allegation on June 19, 2002. *Id*. ¶ 105. She alleges that Baither related to her a story about an obstetrician performing a manual exam on a woman while humming a song called "Getting to Know You." *Id*. ¶ 106. She first reported this allegation on May 16, 2002. *Id*. ¶ 107.

The plaintiff alleges that she received an e-mail stating, "You have just been humped by a frog" and "You are a sexy bitch," which allegedly came from the computer used by a female co-worker. *Id*. ¶ 109. She first reported this incident in October 2001. *Id*. ¶ 110. She alleges that there was a pinup calendar on the desk of a co-worker showing cartoon figures in suggestive positions. *Id*. ¶ 111. She alleges that she told Dassatti about this. *Id*.

On May 9 or 10, 2002 Thibeault walked into the office that she shared with Dassatti and observed the plaintiff, who appeared to be upset. *Id*. ¶ 114. The plaintiff asked Thibeault if she

would meet the plaintiff outside of work if the plaintiff asked, and Thibeault responded that she would. *Id.* On May 10, 2002 the plaintiff sent Thibeault an e-mail expressing concern over the fact that Dassatti refused to meet her outside of work. *Id.* ¶ 115. Thibeault replied immediately, explaining that Dassatti was a private person, he did not have a low opinion of her and that the plaintiff should tell Dassatti what it was that she wished to speak about and find a private place in the office to have this conversation. *Id.* ¶ 116. On May 16, 2002 the plaintiff sent Thibeault another e-mail which reminded Thibeault about her prior discussions with the plaintiff regarding the frog e-mail and Baither's statements about her panties. *Id.* ¶ 118. The message went on to describe comments and actions of Baither and Dassatti that could be considered sexual harassment. *Id.* Thibeault replied immediately to the e-mail saying that she wished that these matters had been brought promptly to her attention, that such behavior was intolerable and that it would be necessary for Thibeault and the plaintiff to meet. *Id.* ¶ 119.

On May 16, 2002 Thibeault and the plaintiff met at length. *Id.* ¶ 120. Thibeault took notes during the meeting and some time later, at the plaintiff's request, provided her with a copy of the notes. *Id.* On May 17, 2002 the plaintiff e-mailed Thibeault, discussing the nature of her office relationship with Dassatti. *Id.* ¶ 121. In subsequent e-mails that day, the plaintiff inquired whether she would be able to find out how Baither and Dassatti responded to her allegations. *Id.* Thibeault related in two separate e-mails what their responses had been. *Id.* Also on that day Thibeault advised the plaintiff that she had instructed Dassatti and Baither that their relationships with the plaintiff were to remain strictly professional and work-related[3] and that the plaintiff was not to consider them "friends" or "special friends." *Id.* ¶ 122. Thibeault also asked the plaintiff to put all of her claims in writing. *Id.*

---

[3] Dassatti claims that he kept his interactions with the plaintiff strictly professional after this date. Plaintiff's Statement of Additional Material Facts ("Plaintiff's SMF") (included in Plaintiff's Responsive SMF, beginning at 26) ¶ 167; Defendant's Reply to Plaintiff's Statement of Additional Material Facts ("Defendant's Responsive SMF") (Docket No. 47) ¶ 167. Thibeault never told Dassatti to do (*continued on next page*)

¶ 123.  On either May 16 or 17, 2002 Thibeault reported to Dahms what the plaintiff had reported to her.  *Id*. ¶ 124.  On one of those two days, Thibeault met with Dassatti and Baither regarding the plaintiff's allegations.  *Id*. ¶ 125.  She instructed them that their relationship with the plaintiff was to remain strictly professional and work-related.  *Id*.

On May 20, 2002 Anderson returned from vacation and received an e-mail from Thibeault, who was then on vacation, relating, *inter alia*, the allegations made by the plaintiff.[4]  *Id*. ¶ 126.  Anderson also received an e-mail from the plaintiff on May 20, 2002 containing specific allegations of harassment. *Id*. ¶ 127.  Anderson immediately contacted the county human resources department and advised them that there was an allegation of sexual harassment in the District Attorney's Office and that she wanted it investigated immediately.  *Id*. ¶ 128.  Anderson was told by Judy Klein-Golden, the human resources director, to contact Mary Gay Kennedy, a local attorney, to perform an independent investigation, for which the county would pay.  *Id*. ¶ 129.  On May 20, 2002 Anderson contacted Kennedy, provided her with the names of the individuals involved and access to any information that Kennedy needed, and asked that Kennedy promptly conduct an investigation.  *Id*. ¶ 130.[5]  Among other things, Anderson specifically requested an investigation and conclusions with respect to the following matters:

> (a) whether the specific allegations as alleged by the plaintiff had merit and could be substantiated;
> (b) whether the allegations made by the plaintiff, if true, were in violation of the sexual harassment policies of either the District Attorney's Office or the county;

---

this with any other person in the office.  *Id*.  His interactions with the plaintiff after the investigation seemed tense.  *Id*.

[4] The plaintiff purports to deny this paragraph of the defendant's statement of material facts.  Plaintiff's Responsive SMF ¶ 126. However, the substance of the response does not deny the defendant's statement but rather qualifies it.  The paragraph is deemed admitted.

[5] The plaintiff purports to deny this paragraph of the defendant's statement of material facts.  Plaintiff's Responsive SMF ¶130. However, the substance of the response does not deny the defendant's statement but rather qualifies it.  The paragraph is deemed admitted.

> (c) whether the internal response by the District Attorney's Office to the allegations made by the plaintiff was appropriate, timely and adequate; and
>
> (d) whether there existed in the District Attorney's Office a general atmosphere that could be interpreted as a hostile work environment.

*Id*. ¶ 131.   On or about May 28, 2002 Anderson called a meeting to be attended by herself, the plaintiff, Dahms and possibly Thibeault, Klein-Golden and Kennedy, at which she reported that Kennedy was unable to substantiate any of the plaintiff's allegations and that the essential conclusion of the report was that no sexual harassment had occurred.  *Id*. ¶ 134.[6]  At this meeting it was stressed that office relations were to be professional and the plaintiff was instructed to report promptly any future incidents.  *Id*. ¶ 135.[7]

On June 19, 2002 Thibeault, Dahms and Anderson received an e-mail from the plaintiff reporting that Baither had made a remark that someone should "stick a bug up Stephanie's ass."  *Id*. ¶ 136.   Anderson immediately communicated this complaint to Klein-Golden and asked her to call Anderson to discuss the allegations.  *Id*. ¶ 137.  On June 20, 2002 Anderson met with Klein-Golden, Thibeault and Dahms to discuss the allegation.  *Id*. ¶ 138. Anderson asked Klein-Golden to conduct an investigation to determine if there was any wrongdoing on Baither's part and, in general, whether there were problems in the working relationship between the plaintiff and Baither.  *Id*. ¶ 139.  Klein-Golden

---

[6] The plaintiff purports to deny this paragraph of the defendant's statement of material facts.  Plaintiff's Responsive SMF ¶ 134.  With the exception of a dispute about who attended the meeting, the proffered denial does not respond to any of the factual assertions included in the paragraph at issue.  In fact, the response goes well beyond even a qualification of those factual assertions, offering a full page of additional factual assertions.  Under this court's Local Rule 56, such additional facts are to be included in a statement of additional facts to be submitted by the nonmoving party, thereby allowing the moving party an opportunity to respond to the new factual assertions.  They are not to be placed only in the nonmoving party's responses to the moving party's statement of material facts.  With respect to ¶ 134 and numerous other paragraphs, I have ignored all factual assertions in the plaintiff's responses to the defendant's statements of material facts that cannot reasonably be construed as mere denials or qualifications.  The defendant filed a separate objection to many of the plaintiff's responses to paragraphs in the defendant's statement of material facts.  Defendant's Objection to Plaintiff's Responses to Defendant's Statement of Material Facts ("Defendant's Objection") (Docket No. 48).  I have not used any of the material to which the defendant objects, so its motion is moot.

[7] Again, the plaintiff responds to this paragraph of the defendant's statement of material facts with a purported denial that is not responsive.  Plaintiff's Responsive SMF ¶ 135.  The paragraph has been deemed admitted.

investigated the allegation and issued a report on July 3, 2002.  *Id*. ¶ 140.[8]  Klein-Golden recommended that the plaintiff meet with a counselor from the Employee Assistance Program about how to react when someone makes a comment that offends her.  Plaintiff's SMF ¶ 176; Defendant's Responsive SMF ¶ 176.  She also suggested that the plaintiff be instructed to contact the Employee Assistance Program whenever she felt offended before making any complaint to a supervisor.  *Id*.

The plaintiff was on vacation from July 4 through July 15, 2002.  Defendant's SMF ¶ 141; Plaintiff's Responsive SMF ¶ 141.  Upon the plaintiff's return from vacation, Anderson informed her that her claim against Baither had not been substantiated and gave the plaintiff a memorandum instructing her to contact the Employee Assistance Program in order to obtain assistance in dealing with situations where employees made comments that bothered her.  *Id*. ¶ 142.  Baither and the plaintiff were instructed to meet with a neutral mediator in order to enable them to work together with minimal friction.  *Id*. ¶ 143.

The plaintiff alleges that Klein-Golden, Dahms, Dassatti, Baither, Anderson and Thibeault retaliated against her because she brought a complaint of sexual harassment.  *Id*. ¶ 144.  She contends that Thibeault retaliated against her by accusing her of not coming to work in order to work but to look for love, by telling Dassatti and Baither they could not be as supportive of the plaintiff as they had been in the past and that the plaintiff could not consider them friends, by telling her that because she had emotional distress and had missed time from work and because friendly conversations made her uncomfortable, she could not have conversations with co-workers that were not professional, and by saying on June 25, 2002, while leaning forward and using a hissing voice, "you mean you are accusing Stephen — are you accusing Stephen of lying because he has never accused you of lying" and telling

---

[8] The plaintiff purports to deny this paragraph of the defendant's statement of material facts, but the denial is not responsive.  Plaintiff's Responsive SMF ¶ 140.  The paragraph is deemed admitted.

her that nobody was speaking to her because Thibeault had told them not to because everything people said offended her.  *Id*. ¶¶ 145-48.

The plaintiff alleges that Dahms retaliated against her by telling her that she had to see a counselor from the Employee Assistance Program, by saying nothing when Anderson said that the plaintiff was delusional and when the plaintiff was instructed not to engage in familiar conversations at work and by telling her that she could no longer use sick time for anything related to work-related stress.  *Id*. ¶¶ 149-51.

The plaintiff alleges that Anderson retaliated against her by calling her "delusional" and "paranoid," by requiring her to see a counselor from the Employee Assistance Program, and by stating that anyone who calls the plaintiff a friend has a romantic interest in the plaintiff and wants to have sex with her because that is what the plaintiff wants.  *Id*. ¶¶ 152-55.

The plaintiff alleges that Klein-Golden retaliated against her by requiring her to attend Employee Assistance Program counseling.  *Id*. ¶ 156.

The plaintiff alleges that Dassatti retaliated against her by no longer doing card tricks with her, no longer playing with his puppet with her, by not admitting that Baither made the statement that somebody should "stick a bug up Stephanie's ass," and by decreasing his use of her services in the courtroom.  *Id*. ¶ 157.  She alleges that Baither retaliated against her by making the comment about "sticking a bug up Stephanie's ass."  *Id*. ¶ 159.

The plaintiff  also alleges that either Thibeault or Klein-Golden retaliated against her by scheduling an interview at a time when she knew that the plaintiff would be in the morning Juvenile Division meeting, so that the plaintiff would be "pulled" from the division meeting in front of her colleagues.  *Id.* ¶ 158.

The plaintiff resigned on July 17, 2002.  Plaintiff's SMF ¶ 179.[9]

### III.  Discussion

The complaint in this action alleges violation of 42 U.S.C. § 2000e-2, sometimes referred to as Title VII, and the Maine Human Rights Act, 5 M.R.S.A. § 4572, by sexual discrimination creating a hostile work environment and causing a constructive discharge and by retaliation for making an administrative claim of discrimination based on sex.  Complaint and Demand for Jury Trial (Docket No. 1) ¶¶ 57-79.  Counts I, III and V invoke the federal statute; Counts II, IV and VI invoke the state statute.

The defendant states, correctly, *see Paquin v. MBNA Mktg. Sys., Inc.*, 233 F.Supp.2d 58, 64 (D. Me. 2002),  that the analysis of the plaintiff's claims under the federal and state statutes is the same, Defendant's Motion for Summary Judgment, etc. ("Motion") (Docket No. 24) at 9-10.  The plaintiff does not address this point, but her memorandum of law makes no distinction between her federal and state claims.  Plaintiff's Opposition to Defendant's Motion for Summary Judgment, etc. ("Opposition") (Docket No. 36).

### A.  Hostile Environment (Counts I and II)

In order to prevail on her claims of hostile environment sexual harassment, the plaintiff must prove that (i) she is a member of a protected class, (ii) she was subjected to unwelcome sexual harassment, (iii) the harassment was based on sex, (iv) the harassment was sufficiently severe or pervasive as to alter the conditions of her employment and create an abusive work environment, (v) the objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile and abusive and the plaintiff in fact did perceive it to be so, and (vi) some basis for employer liability has been established.  *O'Rourke v. City of Providence*, 235 F.3d 713, 728

---

[9] The defendant made no response to this paragraph of the plaintiff's statement of material facts.  Rather than deeming the remainder of
(*continued on next page*)

(1st Cir. 2001). The defendant chooses to challenge only the final element in its motion for summary judgment. Motion at 10.

An employer is liable for sexual harassment committed by its employees if the harasser is a direct supervisor of the plaintiff, *i.e.*, vicarious liability, or, as to non-supervisory employees, if the harassment is causally connected to some negligence on the employer's part, *to wit*, if the employer knew or should have known of the harassment and failed to take prompt action to stop it. *Noviello v. City of Boston*, 398 F.3d 76, 94-95 (1st Cir. 2005). The defendant contends that neither Baither nor Dassatti were supervisory employees. Motion at 11-13. The plaintiff responds that the harassment was conducted not only by Baither and Dassatti but also by Anderson, Thibeault, Dahms and Klein-Golden. Opposition at 3-7. However, she offers no reason why Baither should be considered her supervisor, failing to discuss this issue at all. *Id*. I therefore will not consider Baither further as a possible source of vicarious liability for the defendant on the hostile environment claims.

The defendant in its reply contends that the plaintiff may not rely on any alleged harassment by Anderson, Thibeault, Dahms or Klein-Golden with respect to these counts because she testified at her deposition "that nobody harassed her other than" Dassatti and Baither. Defendant's Reply Memorandum in Support of Motion for Summary Judgment ("Reply") (Docket No. 46) at 1-2. The plaintiff denied the paragraph in the defendant's statement of material facts that asserted the she "does not allege that anyone other than Dassatti or Baither sexually harassed her." Defendant's SMF ¶ 108; Plaintiff's Responsive SMF ¶ 108. However, the plaintiff did testify that she does not allege that anyone other than Baither and Dassatti sexually harassed her. Deposition of Carol Davis ("Plaintiff's Dep.") (Docket No. 30) at 210. Moreover, the citations to her deposition testimony in support of the plaintiff's denial of this paragraph of the defendant's statement of material facts do not support a

_____

the paragraph admitted, however, I do not consider it because it states a legal conclusion.

denial.  *See id*. at 219-20, 272-73, 315-17, 331.  Contrary to the defendant's argument, Reply at 2, the plaintiff is not now attempting to contradict her deposition testimony with a subsequent sworn statement, a tactic that is essentially foreclosed by *Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4-5 (1st Cir. 1994), as much as she is attempting to persuade the court that her response to other questions during the deposition somehow contradicted her clear response to the question whether she alleged that anyone other than Dassatti or Baither sexually harassed her.  I am not persuaded.  The plaintiff's clear deposition testimony governs here.

The remaining question, therefore, is whether there is a disputed issue of fact as to Dassatti's alleged status as the plaintiff's direct supervisor.  As the parties have noted,  the circuit courts do not agree on the appropriate definition of this term.  Opposition at 4-5 & nn. 2-4; Reply at 2-4 & n.2.  In the Seventh Circuit, to be a supervisor for purposes of Title VII liability for hostile environment sexual harassment, an individual must have the authority to hire, fire, demote, promote, transfer and/or discipline the plaintiff, in some combination.  *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 355 (7th Cir. 2002) (citing *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1034 (7th Cir. 1998)); *see also Joens v. John Morrell & Co.*, 354 F.3d 938, 940-41 (8th Cir. 2004); *Mikels v. City of Durham*, 183 F.3d 323, 334 (4th Cir. 1999).  An individual with the authority to direct the plaintiff's work operations, to have input into the plaintiff's performance evaluations and responsibility for training the plaintiff and other employees is not, without more, a supervisor for this purpose.  *Bodine*, 276 F.3d at 355.  "An individual is not a supervisor unless he possesses the authority to *directly* affect the terms and conditions of a victim's employment."  *Id*. (emphasis in original).  Overseeing aspects of the plaintiff's job performance is not enough.  *Id*.; *see also Rhodes v. Illinois Dep't of Transp.*, 359 F.3d 498, 506 (7th Cir. 2004).  The Second Circuit has rejected this definition as too narrow.  *Mack v. Otis Elevator Co.*, 326 F.3d 116, 126 (2d Cir. 2003).  That court holds that an individual who has and

exercises the authority to make and oversee the daily work assignments of the plaintiff is a supervisor for purposes of establishing an employer's liability for hostile work environment sexual harassment. *Id*. at 127.  *See also Hirschfeld v. New Mexico Corrections Dep't*, 916 F.2d 572, 579 (10th Cir. 1990) (adopting Section 219(2)(d) of *Restatement (Second) of Agency* for this purpose;  imputing employee's sexual harassment to employer when authority delegated to employee by employer empowers the employee so to act).  A district court cited by the plaintiff takes this expansion even further; it holds that liability will attach to the employer of the harasser who has 'limited actual authority to monitor co-employees" when "the victim reasonably believed that the harasser possessed supervisory powers."  *Dinkins v. Charoen Pokphand USA, Inc.*, 133 F.Supp.2d 1254, 1266 (M.D. Ala. 2001) (noting that claims based on apparent authority are "unusual").

In this regard, the First Circuit "agree[s] with the Seventh Circuit that the essence of supervisory status is the authority to affect the terms and conditions of the victim's employment," citing *Parkins*, 163 F.3d at 1034.  *Noviello v. City of Boston*, 398 F.3d 76, 95-96 (1st Cir. 2005).  "Without some modicum of [the] authority [to hire, fire, demote, promote, transfer or discipline an employee], a harasser cannot qualify as a supervisor for purposes of imputing vicarious liability to the employer in a Title VII case."  *Id*. at 96. The First Circuit requires actual authority.  *Id*.  The plaintiff must present evidence that the alleged harasser "had the power to terminate, discipline, or otherwise affect the terms and conditions of her employment."  *Id*.  *Noviello* makes clear that the plaintiff's belief that Dassatti had the necessary supervisory powers over her, however reasonable, is not the determining factor.  Its citation with approval of the Seventh Circuit's case law in this area strongly suggests, along with its discussion of the applicable standard, that the more restrictive Seventh Circuit definition should be applied in this circuit.[10]

---

[10] The plaintiff contends that the First Circuit "did not choose between the two tests" in *Noviello*, citing footnote 5 of that opinion. (*continued on next page*)

The defendant contends that Dassatti had no "authority whatsoever with respect to the Plaintiff's employment circumstances." Motion at 12. The plaintiff disagrees, relying on paragraph 3 of her response to the defendant's statement of material facts. Opposition at 6.[11] Paragraph 3 of the defendant's statement of material facts provides:

> Stephan [sic] Dassatti has served as an Assistant District Attorney in the Juvenile Division in the Cumberland County District Attorney's Office from August 5, 1991, to the present. He is a non-supervisory employee of the State of Maine.

Defendant's SMF ¶ 3. The statement is supported by the citation given. Anderson Aff. ¶¶ 16, 25-32.

The plaintiff's response to that paragraph, a purported qualification, provides:

> Dassatti had supervisory authority over Plaintiff. He assigned her work, and had input into her annual reviews. Plaintiff's job was to provide support to Dassatti, at his direction. In addition, Dassatti routinely told Plaintiff that he was her boss, and he would reprimand and even pretend to fire her. Christine Thibeault also informed Plaintiff that Dassatti was her supervisor. When Thibeault was in the Bridgton District Court, the Bath District Court, or out of the office for any other reason, Plaintiff was left under Dassatti's sole supervision. Plaintiff was also left under Dassatti's supervision when Thibeault was on vacation, out sick, or in court. Plaintiff was under Dassatti's supervision more often then [sic] Thibeault's. *Davis Dec., ¶¶ 3-6.* Dassatti acknowledged that he could assign work to staff, such as Plaintiff, and that if he requested that a staff member be fired, Thibeault and Anderson probably would investigate his complaint and act upon it. *Dassatti Depo. at 17-18, 20.* Dassatti also acknowledged that he had daily contact with Plaintiff, except on rare occasions, and that it was not uncommon for them to be alone together at work. *Dassatti Depo. at 32-33.* Dassatti's power to affect Plaintiff's employment can be seen in her first, probationary evaluation from June 2000, in which he contributed many negative comments to which she had to respond and improve her performance in order to maintain her position. *Davis Dec., ¶ 5.*

---

Opposition at 5. To the contrary, the body of that opinion makes clear that the First Circuit agrees with the Seventh Circuit test; footnote 5 merely observes that even if the First Circuit were to adopt the Second Circuit test, the outcome in *Noviello* would have been the same. 398 F.3d at 96 n.5.

[11] This is an inappropriate method of supporting a party's opposition to a motion for summary judgment. Responses to the moving party's statement of material facts may only admit, deny or qualify that statement. When the nonmoving party wishes to rely on additional facts in support of her opposition, those facts should be presented in a separate statement of additional facts to which the moving party has an opportunity to respond.

Plaintiff's Responsive SMF ¶ 3 (emphasis in original).  If this response were properly before the court, I would deal with it in the following manner. The ninth and tenth sentences above, citing to Dassatti's deposition, do not assert facts that are relevant to the First Circuit test, with the exception of the assertions that Thibeault and Anderson would investigate a request by Dassatti that a staff member be fired, and that they would be the ones to act on the request, assertions that support the defendant's position under the First Circuit test.  The defendant objects to this response "on the basis that the assertions regarding Dassatti's alleged input into Plaintiff's annual reviews and 'power to effect [sic] Plaintiff's employment' lack foundation and appear to be based on speculation.  The documents referred to do not support the factual assertions." Defendant's Objection at 2, ¶ 3.  However, each of the remaining sentences in paragraph 3 of the plaintiff's responsive statement of material facts is supported by the cited paragraph of her affidavit.  Plaintiff's Decl. ¶¶ 3-6.  I agree that she has not made the necessary showing of a foundation for her assertion in paragraph 5 of her affidavit, worded somewhat differently from the last sentence of paragraph 3 of her responsive statement, for which it is cited as the sole support, that "[i]f I had not responded to these comments [by Dassatti on the plaintiff's probationary evaluation] and improved my performance in Dassatti's eyes, I would have lost my job immediately." *Id.* ¶ 5.  She has made no attempt to show how she could have known that she would have "lost [her] job" under those circumstances.

In any event, the remaining sentences of the paragraph at issue do not meet the requirements of the First Circuit test.  The first sentence merely states a legal conclusion; it serves no purpose in the absence of supported factual allegations that could lead a reasonable factfinder to that conclusion. The second and third sentences are relevant to the Second Circuit *Mack* test that was rejected by the First Circuit and do not provide evidence relevant to the *Noviello* requirement of actual authority.  The fourth sentence describes one action by Dassatti, telling the plaintiff that he was her "boss," that might

be construed as evidence of apparent authority, but that is not sufficient under the First Circuit test. The remainder of that sentence, asserting that Dassatti would "reprimand" the plaintiff and "pretend" to fire her, do not provide evidence of the actual power to terminate, discipline,[12] or otherwise affect the terms and conditions of the plaintiff's employment.  The fifth sentence of the paragraph is relevant only to a standard that includes apparent authority.  The sixth through eighth sentences do not tend to establish that Dassatti had actual authority over the terms of the plaintiff's employment.  There are times when any supervisor will be physically absent from the workplace; that absence does not by itself transform another employee into a supervisor.  It is actual authority that governs, and none of these sentences provide any evidence of that.

Because I conclude that the plaintiff has not offered evidence that would allow a reasonable factfinder to conclude that Dassatti was her supervisor for purposes of her sexual harassment hostile environment claim, it is not necessary to consider the parties' arguments with respect to the affirmative defense to vicarious liability created by *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998).

The plaintiff argues in the alternative that the defendant may be held liable for the allegedly harassing actions of Baither and Dassatti because it knew or should have known about those actions, Opposition at 17-19, a position disputed by the defendant, Motion at 14-16, Reply at 9-11.  The defendant does not argue here that the actions did not constitute sexual harassment or that they did not create a hostile work environment; its argument is limited to the assertion that the plaintiff cannot show that it knew or should have known of the actions in question before May 16, 2002, after which it acted promptly to remedy the harassment.  Motion at 14-16.  To establish employer liability for the harassing actions of a non-supervisory co-employee of the plaintiff, the plaintiff must demonstrate that

---

[12] An oral reprimand which, for all that appears in the summary judgment record, is communicated to no one other than the plaintiff is not the equivalent of discipline for purposes of the First Circuit test.  In addition, the defendant has submitted uncontroverted evidence that Dassatti did not "have the ability to reprimand or otherwise discipline any employee working in the Cumberland County District (*continued on next page*)

the employer knew or should have known of the alleged sexual harassment and failed to implement prompt and appropriate action. *Crowley v. L.L. Bean, Inc.*, 303 F.3d 387, 401 (1st Cir. 2002); *O'Rourke*, 235 F.3d at 736.

The plaintiff offers the following description of the evidence that she contends provided the defendant with notice of Baither and Dassatti's harassment before May 16, 2002.

> Plaintiff twice complained to Thibeault about comments being made in the workplace that she found offensive, and twice her concerns were brushed aside. Plaintiff also complained to Dassatti about her discomfort during the pin-up calendar incident, but her concerns again were ignored. In addition, several of Plaintiff's coworkers — including each and every one of the attorneys whom she supported as the office trial assistant — witnessed incidents of harassment, ranging from offensive comments by Baither to physical assault by Dassatti.

Opposition at 18. She also asserts that she complained to Thibeault about the frog e-mail that she received in the relevant time period. *Id*. at 12.[13] Since the plaintiff has not established that Dassatti was a supervisor, her report to him about the calendar cannot be included in any analysis of the question whether the defendant knew or should have known about the harassment before May 16, 2002. Remaining for consideration are Baither's alleged comment to the plaintiff, made at least twice and perhaps as many as four times, that she should not "get her panties all excited," Defendant's SMF ¶¶ 96-97, Plaintiff's Responsive SMF ¶¶ 96-97; the e-mail stating "You have just been humped by a frog" and "You are a sexy bitch," which came from within the office but from an unknown individual, *id*. ¶¶ 109-10; and the claim that Thibeault, when Dassatti "hollered" at the plaintiff, commanding her to do a coin trick, shut her office door, *id*. ¶ 89.[14] These incidents, taken together, are not sufficient to

---

Attorney's Office." Anderson Aff. ¶ 31.

[13] The plaintiff again relies on her purported qualification responses to paragraphs of the defendant's statement of material facts to support her argument rather than presenting the new facts in a separate statement. Opposition at 12-13; Plaintiff's Responsive SMF ¶¶ 81, 83, 89, 94, 97-98, 110-11.

[14] The rest of the specific incidents to which the plaintiff appears to be referring are set forth at pages 12-13 of her memorandum of law. She offers no evidence that she reported these incidents to Thibeault or any other supervisory employee or that any supervisory employee witnessed the incidents. Plaintiff's Responsive SMF ¶¶ 81, 83, 89, 94, 98. She offers no evidence that the employees (*continued on next page*)

allow a reasonable factfinder to conclude that the sexual harassment of which the plaintiff complains was so severe or pervasive that the defendant should have known about it, nor that remedial action was required based on what the defendant did know, before May 16, 2002. *Compare Morrison v. Carleton Woolen Mills, Inc.*, 108 F.3d 429, 437-38 (1st Cir. 1997) (describing severe and pervasive harassment).

The defendant apparently admits, at least for the purpose of its summary judgment motion, that it did have sufficient notice after May 16, 2002 to trigger its duty to act. Motion at 16-18. The plaintiff characterizes the defendant's actions after that date as a "sham investigation" that "placed an official stamp on further harassment." Opposition at 19. However, the plaintiff does not provide evidence of further harassment. Rather, she presents evidence of retaliation in response to her complaints. The defendant describes an investigation and resulting instructions to Baither and Dassatti that might be sufficient, Motion at 16-18, if the plaintiff had not presented evidence in support of her allegation that the investigation was mere window-dressing. But she did provide such evidence. *See* Plaintiff's Responsive SMF ¶¶ 128-31, 133-34. The defendant does not respond to the plaintiff's characterization of the investigation itself as falling below the standard of prompt and appropriate action. Given the benefit of the summary judgment standard requiring that all reasonable inferences be drawn from the facts in the nonmoving party's favor, I cannot conclude as a matter of law that the defendant's response after May 16, 2002 was sufficient to protect it from the hostile environment claim. Accordingly, as to that limited issue only, summary judgment should be denied.

## B. Retaliation (Counts III & IV)

These counts allege that the defendant retaliated against the plaintiff for making complaints under the applicable state and federal statutes. Complaint ¶¶ 65-71. The federal and state-law claims

---

identified as having witnessed these incidents were supervisory employees. *Id*.

in this regard are interpreted using the same analytical framework. *Martin v. Inhabitants of the City of Biddeford*, 261 F.Supp.2d 34, 37 (D. Me. 2003).

> To sustain a claim of retaliation, plaintiffs must produc[e] evidence on three points: (1) they engaged in protected conduct under Title VII; (2) they experienced an adverse employment action; and (3) a causal connection exists between the protected conduct and the adverse action.
>
> * * *
>
> To be adverse, an action must materially change the conditions of plaintiffs' employ. Material changes include demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees.

*Gu v. Boston Police Dep't*, 312 F.3d 6, 13-14 (1st Cir. 2002) (citations and internal punctuation omitted). "Whether an employment action is 'adverse' — and therefore actionable under Title VII — is gauged by an objective standard." *Marrero v. Goya of Puerto Rico, Inc.*, 304 F.3d 7, 23 (1st Cir. 2002).

For purposes of its motion, the defendant concedes that the plaintiff engaged in protected conduct when she complained of alleged sexual harassment and that the acts which she contends constitute retaliation occurred as a result of the protected conduct. Motion at 23-24. It argues only that the plaintiff cannot demonstrate that she suffered adverse employment action as a result of the protected conduct. *Id*. at 24. The plaintiff identifies the following as adverse employment actions resulting from her protected activity: denial of the right to use sick time,[15] requiring her to see an EAP counselor, requiring her to consult an EAP counselor before making any additional complaints of

_____

[15] Specifically, the plaintiff contends in her response to paragraph 160 of the defendant's statement of material facts that she "was told she no longer could use sick time to address work-related stress, since the events she claimed caused her stress had not really happened." Plaintiff's Responsive SMF ¶ 160. The defendant objects to this response "on the basis that the denial and additional factual averments are not supported by the record reference provided." Defendant's Objection ¶ 160. Paragraph 151 of the defendant's statement of material facts provides: "Plaintiff alleges that Dahms retaliated against her by telling her that she could no longer use sick time for anything related to work-related stress," Defendant's SMF ¶ 151, and the plaintiff responded with an admission, Plaintiff's Responsive SMF ¶ 151. Thus the defendant can only be objecting to the phrase "since the events she claimed caused her stress had not really happened.." None of the pages of the plaintiff's deposition cited in support of her response to paragraph 160 of the defendant's statement of material facts supports that portion of her response to paragraph 160. It will therefore be disregarded.

harassment and constructive discharge.  Opposition at 28.  The plaintiff also spends several pages discussing a hostile work environment as a "retaliatory adverse employment action," *id*. at 24-28, and must therefore have intended to claim that such an adverse employment action occurred in this case.

The plaintiff cites no authority for her contention that requiring an employee to attend counseling provided by the employer or requiring that employee to consult such a counselor before making new complaints about alleged harassment constitutes an adverse employment action, and I am aware of none.   Neither requirement appears to me to fit within the First Circuit's definition of an adverse employment action, that is, one that materially changes the conditions of the plaintiff's employment.  I accordingly will not consider them further.  Denial of the right to use sick time for a particular purpose, although similarly without citation of supporting authority by the plaintiff, presents a closer question.  This could be seen as a "change in . . . benefits."  *Martin*, 261 F.Supp.2d at 38. The defendant does not discuss this allegation separately; it merely lists it as an allegation and then contends that "[t]he actions identified by the Plaintiff in support of her retaliation claim fail, as a matter of law, to rise to the level of tangible employment action."  Motion at 22, 25-26.  Applying the summary-judgment standard to this allegation, I cannot conclude that a reasonable factfinder could not determine that this limitation in the plaintiff's use of her sick-time benefit was an adverse employment action.  This conclusion makes it unnecessary to address the plaintiff's arguments that a post-complaint hostile working environment rose to the level of an adverse employment action.  I will address the plaintiff's allegations of constructive discharge in the following section of this recommended decision.

## C.  Constructive Discharge (Counts V and VI)

The defendant contends that it is entitled to summary judgment on the plaintiff's claims that she was constructively discharged because there is no evidence that a reasonable person would have been unable to endure the working conditions described by the plaintiff.  Motion at 27.[16]

> For an atmosphere of sexual harassment or hostility to be actionable, we reiterate, . . . the offending behavior must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.  A hostile-environment constructive discharge claim entails something more:  A plaintiff who advances such a compound claim must show working conditions so intolerable that a reasonable person would have felt compelled to resign.

*Pennsylvania State Police v. Suders*, 542 U.S. 129, ___, 124 S.Ct. 2342, 2354 (2004) (citation and internal quotation marks omitted).  "The standard is an objective one; it cannot be triggered solely by the employee's subjective beliefs, no matter how sincerely held."  *Marrero*, 304 F.3d at 28  (citation and internal quotation marks omitted).

The plaintiff describes the actions which she contends compelled her to resign as follows:

> Each and every time Plaintiff reported the sexual harassment she was experiencing, she faced ridicule.  Her complaints were brushed off by her supervisors.  When she finally could not bear the harassment any longer and made a formal complaint, she was called "delusional" by the District Attorney herself.  She was shunned by her supervisors and co-workers on her supervisors' instructions, was told that she could not distinguish truth from fiction, was denied the use of her sick time to address workplace stress, and was required to consult a counselor before making any additional harassment complaints.
>
> * * *
>
> Plaintiff was harassed by her supervising attorney, who abused his authority over her.  This harassment was witnessed by other Assistant District Attorneys, to that point that one attorney commented that Dassatti appeared to be intimidating Plaintiff.  Attorneys heard Baither comment that he had seen Plaintiff in her panties, drinking and smoking a bong, and an attorney heard

---

[16] The defendant also argues that it cannot be liable for constructive discharge because it cannot be vicariously liable for the hostile work environment alleged in Counts I and II of the complaint.  Motion at 26-27.  Because I have concluded that disputed material facts remain as to a narrowly-drawn portion of the plaintiff's claim of a hostile work environment, I do not separately address this argument.

> Dassatti comment that he was bicycling past Plaintiff's house so often that he asked Dassatti whether he was stalking her.
>
>                 * * *
>
> From the very day that Plaintiff made her [more formal] complaint, her supervisor felt put out by it, complaining to Plaintiff that she didn't have three hours a day to spend on the issues she raised.
>
>                 * * *
>
> When the investigation concluded, DA Anderson told Plaintiff that she was delusional, and that she couldn't distinguish reality from fiction. Anderson also told Plaintiff that she should "get with the program" while shrugging off one of the comments Baither had made about Plaintiff's panties with an offhand "so what." Plaintiff was told that she no longer could use her ample supply of unused sick time to deal with stress and emotional distress she was experiencing, because there was no reason for her to be feeling stress or distress. Thibeault instructed all employees in the DA's Office not to interact with Plaintiff other than to assign her work or to receive work product from her. Following these instructions, Plaintiff's co-workers ostracized her.
>
> It was in this atmosphere that plaintiff somehow found the courage to make a second complaint when Baither — in retaliation for Plaintiff's first complaint — knowingly made an offensive comment in front of Plaintiff and Dassatti. Although Baither admitted he may have made the comment Plaintiff complained of, the employees Defendant assigned to investigate the matter asked Baither why he thought Plaintiff might be lying. As a direct result of Plaintiff's second complaint, Anderson informed her that she was required to see a counselor as a condition of employment. Anderson also denied Plaintiff the protection supposedly provided by the DA's Office anti-harassment policy, requiring Plaintiff to see a counselor prior to making any additional complaints about her working environment.

Opposition at 20-22 (citations omitted). Stripped of its rhetorical flourishes and factual assertions unsupported by factual information provided by the plaintiff,[17] this presentation falls short of the *Suders* mark.

       Many of the incidents reported by the plaintiff do not appear to be based on sex. The First Circuit has recently been less than clear in *dicta* on the question whether, in the context of a

---

[17] Specifically, the summary judgment record contains no support for the factual assertions that Baither's "stick a bug" remark was made "in retaliation for Plaintiff's first complaint," *see* Defendant's SMF ¶ 104; Plaintiff's Responsive SMF ¶ 104, that the plaintiff had "ample" sick leave time available or that she was told that she could not use that sick leave time "because there was no reason for her to be feeling stress or distress."

constructive-discharge hostile-environment claim, all of the conduct at issue must be sexually based. *Compare Lee-Crespo v. Schering-Plough Del Caribe Inc*., 354 F.3d 34, 45 (1st Cir. 2003) ("Not all of plaintiff's evidence could be taken as evidence of sexual harassment."), *with Marrero*, 304 F.3d at 20 (where harassing conduct, not specifically sexual in nature, undermines ability to do job, it should be considered along with overtly sexually abusive conduct in assessing hostile work environment claim). Considering all of the incidents to which the argument quoted above refers, regardless of their sexual content or basis, I conclude that no reasonable factfinder could conclude that a reasonable person in the plaintiff's position would have felt compelled to resign. The plaintiff does not set forth the "constant attentions of a lascivious" co-worker found sufficient in *Marrero*, 304 F.3d at 19; the factual allegations presented by the plaintiff may demonstrate working conditions that apparently were subjectively intolerable but which objectively are at most "unpleasant and tinged with discriminatory acts," not enough to create an objectively intolerable atmosphere, *see Tidwell v. Meyer's Bakeries, Inc.*, 93 F.3d 490, 497 (8th Cir, 1996). Seeking relief while staying on the job is "the rule save in exceptional cases." *Lee-Crespo*, 354 F.3d at 45 (quoting *Reed v. MBNA Mktg. Sys., Inc.*, 333 F.3d 27, 33 (1st Cir. 2003). The plaintiff has not provided evidence that would allow a reasonable factfinder to determine that hers is an exceptional case. The defendant is entitled to summary judgment on Counts V and VI.

### IV. Conclusion

For the foregoing reasons, I recommend that the defendant's motion be **GRANTED** as to Counts V and VI and those  portions of Counts I and II that are based on allegations other than those supporting a claim that the defendant knew or should have known of sexually harassing actions by its non-supervisory employees that created a hostile work environment for the plaintiff and failed to take prompt and appropriate remedial action, and otherwise **DENIED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 16th day of June, 2005.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge